484 F.2d 1255
 Caesar MILES, Administrator of the Estate of Michael E.
Miles, Deceased, Appellant,
v.
William F. RYAN Jr., Frank Wells a/k/a Frank Kings Coach Inn
Restaurant Co. also known as the Coach Inn.
 No. 72-1401.
 United States Court of Appeals,
Third Circuit.
 Argued June 11, 1973.
Decided Sept. 4, 1973.
 
 Stephen M. Feldman, Feldman & Feldman, and Rubin Mogul Ardmore, Philadelphia, Pa., for appellant.
 Daniel J. Ryan, John J. Walsh, Jr., Joseph G. Manta, and LaBrum & Doak, Philadelphia, Pa., for appellees.
 Before BIGGS, VAN DUSEN and GIBBONS, Circuit Judges.
 VAN DUSEN, Circuit Judge.
 
 
 1
 Plaintiff[1] appeals from a district court judgment for defendant Ryan entered on the jury's verdict finding the plaintiff was contributorily negligent in a diversity,[2] survival and wrongful death action. Plaintiff contends that the jury's verdict was against the weight of the evidence, that the district court erred when it excluded evidence of drinking on the part of one of the defendants[3] prior to the accident, and because the district court committed numerous errors in its charge.[4]
 
 
 2
 The accident causing the decedent's death occurred on December 17, 1965, on the Pennsylvania Turnpike, west of the Valley Forge service area. Decedent and two passengers were returning home to South Bend, Indiana, at the end of a vacation (N.T. 40). Just prior to the accident, decedent had had difficulty with his vehicle and had pulled into a service area for repairs. In the service area decedent was warned by a State Trooper, Officer Bigus, that the left rear light on the vehicle was not functioning and that he should have the light repaired before continuing on the Turnpike (N.T. 44, 216-18). After fixing the faulty light, the decedent drove a short distance on the highway when the car started to malfunction. The decedent and the occupants decided to attempt to back the car back to the service area (N.T. 46). Shortly thereafter the decedent's car was struck in the rear by the car driven by defendant Ryan.
 
 
 3
 Both parties agree that if decedent's vehicle was on the travelled portion of the Turnpike at the time of the accident, such evidence would sustain a finding of contributory negligence. However, there was sharp disagreement as to the position of the vehicle at the time of the impact. One of decedent's passengers claimed that the decedent's car was off the travelled portion of the highway (N.T. 51), but admitted that this was in contradiction to a statement he made to Officer Bigus immediately after the accident (N.T. 59-60, 64). Another witness for the plaintiff, who came to the scene after the accident, also testified that the car was off the highway (N.T. 79, 80). Defendants Wells and Ryan both stated the vehicle was partially on the highway (N.T. 159, 184-185). The defendants' testimony was corroborated by Officer Bigus, who gave his expert opinion that the point of impact was on the travelled portion of the highway (N.T. 227, 228).
 
 
 4
 It is not for this court to resolve the seeming inconsistencies in the testimony, but rather for the jury, since it is their function to weigh the testimony and the inferences to be drawn from the evidence. See, e.g., Continental Air Lines, Inc. v. Wagner-Morehouse, Inc., 401 F.2d 23 (7th Cir. 1968); Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129 (3d Cir. 1965). A motion for a new trial, based on the ground that the verdict was against the weight of the evidence, is "addressed to the sound discretion of the trial judge and its denial is not ordinarily reviewable on appeal." Pritchard v. Liggett & Myers Tobacco Co., 350 F.2d 479, 482 (3d Cir. 1965); Sokol v. Gussack, 367 F.2d 576 (3d Cir. 1966) (per curiam). After a careful review of the record, we do not believe the district court abused its discretion when it stated:
 
 
 5
 "It is this court's view that there is ample testimony on the record, if believed, to support the jury's finding of contributory negligence."
 
 
 6
 338 F.Supp. at 1066.
 
 
 7
 The plaintiff next contends that the district court erred when it excluded evidence that Wells had been drinking at some undisclosed time prior to the accident. Plaintiff's counsel, in chambers, offered the following:
 
 
 8
 "Mr. Wells told Officer Bigus that he had five to seven 'V-O's' and water to drink within a two-hour period . . . when he asked if he had anything to drink.
 
 
 
 * * *
 "There will be testimony that he had five to seven shots of whiskey.
 
 
 
 9
 * * *
 
 
 10
 "I offer the testimony of Officer Bigus about the five to seven 'V-O's' and water within a two-hour period." (N.T. 140, 143, 146)
 
 
 11
 We note that this offer of proof was made with the intention to impeach the credibility of defendant Wells, whom plaintiff's counsel planned to call even before he had had a chance to see if he could prove his joint venture theory through the testimony of the next witness, Ryan,[5] and before he knew whether defense counsel would call Wells.
 
 
 12
 This offer was never renewed after Ryan had completed his testimony. Specifically, it was not renewed before, during, or after the testimony of Wells.
 
 
 13
 It is the rule in Pennsylvania that "[i]ntoxication on the part of a witness at the time of an occurrence about which the witness has testified is a proper matter for the consideration of a jury affecting his credibility." Commonwealth v. Rouchie, 135 Pa.Super. 594, 7 A.2d 102, 107 (1939); Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956); Commonwealth v. Godfrey, 177 Pa.Super. 640, 112 A.2d 434 (1955). However, the Commonwealth courts caution that "while proof of intoxication is relevant where recklessness or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive." Fisher v. Dye, supra at 476 of 125 A.2d; Morreale v. Prince, 436 Pa. 51, 258 A.2d 508 (1969); see also Kriner v. McDonald, 223 Pa.Super. 531, 302 A.2d 392 (1973); Sentz v. Dixon, 224 Pa.Super. 70, 302 A.2d 434 (1973).[6] A similar standard of proof (drinking intoxicating liquors reasonably establishing a degree of intoxication proving inability to accurately observe and remember events in the testimony) is required when the issue is the credibility of a witness. Commonwealth v. Godfrey, supra at 436 of 112 A.2d.[7]
 
 
 14
 In an earlier suit we recognized the rule followed in Pennsylvania when we stated in Gensemar v. Williams, 419 F.2d 1361, 1363 (3d Cir. 1970):
 
 
 15
 "Actually, the Pennsylvania courts hold that the mere fact of drinking intoxicating liquors is inadmissible unless it reasonably establishes a degree of intoxication which proves unfitness to drive, Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956). Such evidence is considered so prejudicial that the Pennsylvania Supreme Court has stated that a 'wise' procedure in a case where evidence of drinking is offered is for the court first to hear all the testimony out of hearing of the jury in order to determine whether it is sufficient to meet the above-mentioned standard. See Vignoli v. Standard Motor Freight, Inc., 418 Pa. 214, 210 A.2d 271 (1965), wherein the Supreme Court of Pennsylvania noted, 'The trial court wisely heard the testimony relative to Crise's alleged intoxication out of the jury's hearing. In circumstances where the jury could not reasonably reach a finding of intoxication, it is highly prejudicial to permit it to hear evidence bearing on the subject' (see 210 A.2d at 273)."
 
 
 16
 The district court properly considered, out of the hearing of the jury, whether the offered evidence reasonably established a degree of intoxication, which affected the capacity of Wells to observe and remember. We cannot find on this record that its finding that plaintiff failed to lay the proper "foundation showing an actual state of intoxication in accordance with the salutory rule of Fisher" (338 F.Supp. at 1067) is reversible error.
 
 
 17
 In reaching this conclusion, the court may have been influenced by the deposition of Frank Wells, filed in the district court on April 23, 1971. In that deposition, Wells reported that he only had three "V.O.'s" and water, and that he had been able to verify the quantity specifically because after the accident "when I went . . . to pay the tab . . . it was my tab night. And I know exactly what was on it. And I talked to the guy, and he showed me exactly what we had" (Doc. 32 at 20-21). He further stated that the statement given to Officer Bigus was made in the hospital, while in a great deal of pain, and in an effort to have the Trooper leave him alone (Doc. 32 at 29-31).
 
 
 18
 At the point in the trial when plaintiff sought to introduce his evidence, the probative value of an admission by Wells that he had been drinking, without the proper foundation that the quantity he had consumed demonstrated an incapacity on his part to observe and remember details at the time of the accident, would have been far outweighed by the unfair prejudice that would have resulted, since the jury might have imputed the drinking by Wells, to the driver, Ryan. See Harvey v. Doliner, 399 Pa. 356, 160 A.2d 562, 565 (1960), where the Pennsylvania Supreme Court recognized the danger of allowing "the trial to drift on a tide of alcoholic debate far away from the principal issue as to who was responsible for the accident in which the plaintiffs were allegedly injured." It is well recognized that evidence may not be admitted where its prejudicial effect outweighs its probative value. See McCormick, Law of Evidence, Sec. 185 (2d ed. 1972); 1 Wigmore, Evidence, Sec. 29 (3d ed. 1940). The prejudicial effect of testimony concerning drinking by Wells on the day of the accident that would suggest to the jury that Ryan had also been drinking would be contrary to these recognized authorities.
 
 
 19
 Furthermore, even if the trial court was incorrect in its determination that plaintiff's offer of proof failed to demonstrate intoxication, we believe that its exclusion was not reversible error, since the court's refusal to admit the offered evidence did not affect the substantial rights of the parties. See F.R.Civ.P. 61. The record makes clear that the statements of Wells were merely supportive of the testimony given by Ryan and Officer Bigus.
 
 
 20
 Plaintiff also alleges that the trial court erred in several points of its charge to the jury. After examining the record and the charge as a whole, it is our opinion that it fairly and adequately submitted the issues in the case to the jury. See Ely v. Reading Co., 424 F.2d 758, 760-761 (3d Cir. 1970).
 
 
 21
 Therefore, the judgment of the district court will be affirmed.[8]
 
 
 22
 BIGGS, Circuit Judge (dissenting).
 
 
 23
 Although I agree with the majority's statement of the relevant Pennsylvania law as to the admissibility of evidence of intoxication, I cannot agree with their application of that law to the facts of this case. The plaintiff laid a sufficient foundation to warrant the admission of evidence concerning Wells' drinking which would have served to impeach Wells' credibility. The evidence was not only admissible under Pennsylvania law[1] and the Federal rule permitting impeachment of one's own witness when that witness is an adverse party,[2] but its exclusion constituted reversible error because Wells' credibility was a crucial issue in the case. In view of the provisions of Rule 43, the majority opinion in supporting the refusal of the district court to receive this evidence apparently relies primarily on what appears to be an arbitrary requirement as to order of proof for I believe my Brethren would concede that the question would have been a proper one on cross-examination. In my view, the plaintiff's attorney made a sufficient, though inartistic, record of the excluded evidence in accordance with Rule 43(c), F.R.Civ.Proc., 28 U.S.C. Since the learned trial Judge took a most negative position in his statements excluding this evidence, the plaintiff was not required to pursue the matter further. In view of Rule 43(b), the majority opinion seems dedicated to an overfine adherence to the order of proof.
 
 
 24
 Pennsylvania courts have consistently held that intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration as affecting his credibility. Commonwealth v. Rouchie, 135 Pa.Super. 594, 7 A.2d 102 (1939); Commonwealth v. Godfrey, 177 Pa.Super. 640, 112 A.2d 434 (1955). The prejudicial nature of evidence bearing on intoxication has been recognized, however, in circumstances where the jury could not reasonably reach a finding of intoxication. See Gensemer v. Williams, 419 F.2d 1361 (3 Cir. 1970). For example, where the issue is whether a driver operated his automobile in a negligent manner, Pennsylvania courts rule evidence of intoxication inadmissible unless it reasonably establishes a degree of intoxication which proves unfitness to drive. Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956).
 
 
 25
 The statement of law set out in note 6 of the majority opinion is indubitably correct but what follows herein must be added. The same standard of proof must be required when the issue is the credibility of a witness, i. e., the drinking of intoxicating liquors must reasonably establish a degree of intoxication which proves inability to accurately observe and remember events, for "[w]hether one may have partaken of some liquor is not a test of one's credibility and is the type of question . . . that may create in the minds of some jurors a most unfavorable inference." Commonwealth v. Godfrey, supra at 644, of 177 Pa.Super., at 436 of 112 A.2d.
 
 
 26
 In the case at bar, plaintiff's counsel offered to prove that "Mr. Wells told Officer Bigus [the police officer who investigated the accident] that he had five to seven 'V.O.'s' and water to drink within a two-hour period . . . when he asked if he had anything to drink. . . ." (Emphasis added.) Plaintiff's counsel went on to say, ". . . That's under oath by the police officer." He then stated, "I offer the testimony of Officer Bigus about the five to seven 'V-O's' and water within a two-hour period."[3]
 
 
 27
 As stated in the majority opinion, the trial court did not believe that the plaintiff had established a sufficient foundation showing an actual state of intoxication. The district court reasoned, ". . . You are just going to say he had drinks. Therefore, his observations are bad. I would think that you would have to give some observations made by somebody of his condition other than the fact that he had six drinks."
 
 
 28
 I cannot agree with the district court's statement. As this court said in Parker v. Reading Company, 363 F.2d 608, 610 (3 Cir. 1966), ". . . [T]he district court seems to have been persuaded that under Pennsylvania law eyewitness testimony of conduct and condition at the time in question is the only way in which intoxication may be proved in a civil case. We have examined the cases but have not been able to discover or infer such a rule." The more recent Pennsylvania cases are not to the contrary. I believe that evidence of excessive alcohol consumption may be in itself sufficient to prove the requisite degree of intoxication. See Cook v. Phila. Transportation Co., 414 Pa. 154, 199 A.2d 446 (1964). While the consumption of "two 7 ounce beers" within the preceding two-hour period would not be sufficient proof, Gensemer v. Williams, supra, eventually the point is reached at which the large number of drinks consumed leads to the logical conclusion that the person was intoxicated.
 
 
 29
 The statement appears in some of the Pennsylvania decisions that "drinking of intoxicating liquors, in itself, does not prove unfitness to drive." See e. g., Balla v. Sladek, supra, 381 Pa. at 93, 112 A.2d at 160. But it is clear from the cases that this statement can only be taken to mean that mere evidence that the person had something to drink is not sufficient, for the concern is that "[t]he word 'drinking,' where alcohol is involved, carries the inevitable connotation of considerable drinking. Certainly, no one familiar with the idioms of current language would say of a person, who had consumed a single glass of beer, that he had been 'drinking.' And yet, in technical correctness, the swallowing of the smallest quantity of a beverage would be 'drinking'. If a witness were asked: 'Did you do any drinking?' he would be required to answer 'Yes', even though the extent of his tippling did not go beyond a glass of the mildest ale. Thus it is that the rules of evidence, in the interests of fairness, require a cross-examiner to approach the question of intoxicating liquor with circumspection and maximum appreciation of the misconceptions which can so easily be created on the subject." Wentworth v. Doliner, 399 Pa. 356, 360-361, 160 A.2d 562, 565 (1960) (Emphasis in original).
 
 
 30
 Thus the question here becomes whether five to seven drinks of whiskey within a two-hour period one-half hour prior to the collision is a sufficiently large enough number of drinks to reasonably establish Well's inability to accurately observe and remember the circumstances surrounding the collision.[4] I believe that it is, and the jury should have been allowed to consider the evidence in judging Wells' credibility.
 
 
 31
 Although Wells' testimony would have been supportive of that of defendant Ryan's as to how the accident occurred, I cannot deem the evidence of Wells' drinking such a large amount of alcohol in such a short length of time not to be highly relevant in respect to the credibility of his testimony. Wells' evidence went not only to the support given Ryan's testimony but was also very relevant on the issue of contributory negligence. And credibility indeed was a most important factor, as the outcome hinged on which witnesses the jury believed concerning the location of the vehicle. It is difficult to conceive how the plaintiff's case was not seriously prejudiced by the failure to receive this evidence of Wells' heavy drinking. Under the circumstances, the amount of liquor Wells had drunk seems to me to be proper impeachment evidence.
 
 
 32
 For the reasons stated, I must respectfully dissent.
 
 
 
 [1]
 The plaintiff, Caesar Miles, is the administrator of the estate of the deceased, Michael E. Miles
 
 
 [2]
 The jurisdiction of the district court was based on 28 U.S.C. Sec. 1332. Defendants were citizens of Pennsylvania and plaintiff a citizen of Indiana. The complaint alleged that the amount in controversy exceeded $10,000. After the entry of judgment, a March 15, 1972, district court order, supported by an opinion, denied plaintiff's motion for new trial
 
 
 [3]
 The plaintiff alleged defendant Frank Wells, a passenger in defendant Ryan's automobile, was on a joint enterprise with Ryan at the time of the accident. The jury found to the contrary. That issue has not been raised on appeal
 
 
 [4]
 See district court opinion referred to in note 2 above, which is reported in 338 F.Supp. 1065 (E.D.Pa.1972)
 
 
 [5]
 The defendant Ryan was subject to a subpoena to testify as a witness in a criminal case in Delaware on the morning of the second day of the trial (N.T. 3-4). Arrangements were made to have him testify out of turn for the defense on the morning of that day in this case in Philadelphia, so that he could meet his other commitment as early as possible on that day. At the end of the first day of the trial, the judge advised the jury in open court as follows:
 "We will recess now until tomorrow morning, and at the request and agreement of both counsel we would like to get started at 9:35 A.M. because of a conflict in time with one of the witnesses, and we will take that witness first; is that correct?
 "Mr. Feldman: That's correct.
 "The Court: I hope it doesn't inconvenience too much, so if you will be here at 9:30 A.M., we will start early and accommodate you."
 
 
 [6]
 Neither the odor of alcohol on a party's breath, see Critzer v. Donovan, 289 Pa. 381, 137 A. 655 (1927), nor the fact that a person had been drinking intoxicating liquor, see Balla v. Sladek, 381 Pa. 85, 112 A.2d 156 (1955), nor testimony that a person had a blood alcohol content which would "affect" his driving, see Billow v. Farmers Trust Company, 438 Pa. 514, 266 A.2d 92 (1970), is sufficient, standing alone, to establish unfitness to drive. The rationale for the exclusion of such evidence has been stated as follows:
 "Certainly if the driver was not intoxicated or driving under the influence of liquor, the fact that he may have taken a drink has no bearing on the question of his negligence. Such testimony tends to raise in the minds of the jurors another issue- whether he was intoxicated-which, in the absence of other evidence, should not have entered into the determination of the case. Moreover, this question was of such a nature as to create an unfair prejudice against the driver and the owner." Critzer v. Donovan, supra at 385 of 289 Pa., at 666 of 137 A.
 
 
 [7]
 See Commonwealth v. Godfrey, supra at 436: ". . . [A]s stated by the learned court below, 'Whether one may have partaken of some liquor is not a test of one's credibility and is the type of question, whether answered in the affirmative or negative that may create in the minds of some jurors a most unfavorable inference."'
 
 
 [8]
 Other contentions of the plaintiff have been considered by this court and rejected
 
 
 [1]
 F.R.Civ.P. 43(a), 28 U.S.C., provides as follows:
 "Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."
 
 
 [2]
 F.R.Civ.P. 43(b) 28 U.S.C., provides as follows:
 "Scope of Examination and Cross-Examination. A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."
 
 
 [3]
 See Transcript 140, 142, 143, 146
 
 
 [4]
 The evidence offered by plaintiff's counsel to the effect that Wells had five to seven drinks is the only evidence which we can consider. Wells had stated in his deposition taken prior to trial that he had three drinks (shots of V.O.), but since the deposition was not offered in evidence at trial or in chambers, it was not evidence in this case and cannot be considered by a reviewing court. Worsham v. Duke, 220 F.2d 506 (6 Cir. 1955); Charles v. Judge and Dolph, Ltd., 263 F.2d 864 (7 Cir. 1959); United States v. City of Brookhaven, 134 F.2d 442 (5 Cir. 1943). Moreover, there is nothing in the record to support the majority's speculation that the district court judge may have considered Wells' deposition in determining if the plaintiff's attorney had laid a sufficient foundation on intoxication. The majority is reaching in nubibus for a reason to uphold the district court's exercise of discretion. Their use of Wells' deposition is speculation and cannot hide the fact that the evidence offered by the plaintiff should have been admitted even under the stringent requirements of Pennsylvania law